IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2015

### STATE OF TENNESSEE v. SHARON DONELLA PHILLIPS

**Appeal from the Criminal Court for Sullivan County**
**No. S60,851     Robert H. Montgomery, Jr., Judge**

---

**No. E2014-00996-CCA-R3-CD – Filed May 15, 2015**

---

The defendant, Sharon Donella Phillips, appeals her Sullivan County Criminal Court jury convictions of reckless endangerment and aggravated arson, challenging the sufficiency of the convicting evidence on the arson conviction and the length of her sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Randall D. Fleming, Kingsport, Tennessee, for the appellant, Sharon Donella Phillips.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Lewis Combs and Kaylin Render, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

In July 2012, the Sullivan County Criminal Court grand jury charged the defendant with one count of attempted first degree murder and two counts of aggravated arson arising out of an incident in which the defendant threw a cup of gasoline on the victim, Larry Maines, and then set the victim on fire within his residence. The trial court conducted a jury trial in April 2013.

The State's proof at trial showed that on the afternoon of October 1, 2011, the defendant visited the victim's residence and asked if she could stay there overnight because her father had just thrown her out of his house. The victim explained that he was related to the defendant through marriage and that she would, on occasion, visit his home.

The victim told the defendant that she could not stay at his house overnight because he was expecting company. The defendant was unhappy about the refusal, but she left.

That evening, the victim's friends, Whalen "Marty" Carpenter and Johnny Mae Nash, visited him at his home. Mr. Carpenter testified that he had known the defendant for most of his life and that he had been a friend of the victim's for over 20 years. Ms. Nash, who had passed away by the time of trial, was an elderly woman who breathed with the assistance of an oxygen tank. The victim and his friends spent the evening playing cards and watching a football game. At some point, the defendant arrived. The victim asked her to leave, but the defendant refused. According to Mr. Carpenter, the defendant was acting "[k]ind of pushy." The defendant then threw a can of beer at the victim, striking the victim on the side of the head. Mr. Carpenter stated that the defendant and the victim then engaged in a physical altercation, wrestling on the floor. The victim denied that he struck the defendant with his fist or with a golf club. The victim then forced the defendant out of his house because of her aggressive behavior. The victim stated that the defendant "had a little tantrum outside" but then left.

The victim's next-door neighbor, Jessica Roberts, testified that around 10:00 p.m. on October 1, she heard screaming and looked outside to see two men pulling the defendant away from the victim's house. Ms. Roberts saw the defendant wielding a three-foot pole, screaming that she was going to kill the victim and that she would be back. According to Ms. Roberts, the two men eventually managed to get the defendant to walk away.

The victim testified that the defendant returned to his house sometime later that evening. She walked into his residence and hurled a brick at the victim, hitting him in the arm. The defendant then fled from the residence before the victim could confront her. Later still, the defendant returned to the victim's house a third time. Mr. Carpenter noticed that the defendant was holding both a cigarette and a cup. The defendant walked straight to the victim; the victim was seated on a loveseat in his living room and speaking with Ms. Nash, who was seated approximately one to two feet away from him. The victim then threw the liquid contents of her cup onto the victim and used a cigarette lighter to set him on fire. The victim described hearing the click of the lighter and immediately thereafter, "poof and I was on fire."

The defendant fled from the house as Mr. Carpenter and Ms. Nash attempted to extinguish the flames from the victim's upper body. Mr. Carpenter's hand was scorched in the process. Mr. Carpenter noticed that the loveseat, the wall, and the floor were on fire as well. The victim, who was in shock, made his way to the bathroom where he climbed into the bathtub and turned on the water in an attempt to put out the flames.

Kingsport Police Department ("KPD") Officers Craig Dunworth and Brandon Metcalf were the first to respond to the scene, arriving between midnight and 1:00 a.m. on October 2. Upon arrival, the officers noticed heavy smoke coming through the front door of the victim's residence. When they entered the house, Officer Dunworth noticed that the loveseat in the living room was on fire and that flames were forming on the wall directly behind the loveseat. Officer Metcalf could hear someone screaming for help. The officers eventually located the victim and coached him out of the house; Officer Metcalf explained that they were afraid to touch him for fear of further injuring him. As the victim made it to his front yard, he exclaimed, "My skin is falling off." The officers found a chair for the victim to sit in until emergency medical personnel could arrive and transport him to the hospital.

KPD Detective Steve Summey responded to the scene on October 2. The loveseat had been removed from the residence by the time he arrived. Detective Summey collected the clothing that had been removed from the victim's body as well as two cups that were found at the scene. Detective Summey took a number of photographs of the scene, which photographs were admitted into evidence and depicted, among other things, the charred wallpaper and sheetrock behind the area where the loveseat had been located. Detective Summey testified that evidence of the fire and the ensuing damage were evident throughout the residence. Other photographs showed dark, ashy footprints through the hallway where the victim had walked to climb into the bathtub and the partially-melted plastic shower curtain in the bathroom.

Because the victim's condition was life-threatening, he was briefly treated at a local hospital and then air-lifted to a hospital in Georgia. While there, the victim underwent 21 skin graft operations and lost the fingers on his right hand. The victim testified that he anticipated undergoing more operations in the future.

Special Agent and forensic scientist Randall K. Nelson with the Tennessee Bureau of Investigation testified that he examined the victim's clothing and some cups gathered from the crime scene. Agent Nelson's analysis revealed the presence of "evaporated gasoline range product" which "include[s] all brands and grades of automotive fuels including gasohol."

With this evidence, the State rested. The defendant's aunt, Lucille Williams, testified that the defendant arrived at her house, which is about a five to 10 minute walk from the victim's residence, on either the evening of October 1 or the early morning hours of October 2. The defendant asked to use Ms. Williams' telephone, and Ms. Williams observed that the defendant's eyes were puffy. The defendant's friend, Karla Long, testified that the defendant arrived at her residence in the early morning

hours of October 2 to use her telephone and that the defendant stayed at her house for approximately one hour. Ms. Long stated that the defendant was crying and was very upset. Ms. Long observed that one of the defendant's eyes was turning black and that the defendant had a knot on her head.

The defendant testified that she was 43 years of age, that she only had a third-grade education, that she was a drug addict, and that she had multiple prior criminal convictions. The defendant stated that she initially visited the victim's house on October 1 to smoke crack cocaine. According to the defendant, she smoked crack cocaine with the victim and Mr. Carpenter, and, at some point, the victim tried to attack her and "have sex" with her. The defendant hit the victim with a beer can in order to fend off the attack, and the victim struck her with his fist and threatened to hit her with a golf club. The defendant later hit the victim with a brick when he attempted to put his hand on her. The victim then picked up the defendant and "body slammed" her outside the front door. At that point, the victim located a container of gasoline outside the victim's residence, poured gasoline into a cup, and reentered the victim's house. The defendant threw the cup of gasoline on the victim, then turned to Mr. Carpenter and asked him for a cigarette lighter. Mr. Carpenter handed her a lighter, and then the defendant "lit [the victim] up."

The defendant stated that she did not expect the fire "to be like that. I thought it would be small." She testified that she "wasn't trying to kill nobody or nothing like that." Once the fire started, the defendant fled first to Ms. Williams' house, then to Ms. Long's residence, and eventually to Knoxville, where she later turned herself into authorities.

Based on this evidence, the jury convicted the defendant as charged with two counts of aggravated arson. In addition, the jury convicted the defendant of reckless endangerment as a lesser included offense of attempted first degree murder. Following a sentencing hearing, the trial court imposed a sentence of 11 months, 29 days in jail to be served for the conviction of reckless endangerment. The trial court merged the aggravated arson convictions and sentenced the defendant as a multiple offender to a term of 32 years' incarceration.

Following the denial of her timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the evidence was insufficient to support her convictions of aggravated arson and that the sentence imposed was excessive. We consider each claim in turn.

*I. Sufficiency*

The defendant first contends that the evidence adduced at trial was insufficient to support her convictions of aggravated arson. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, arson occurs when "[a] person . . . knowingly damages any structure by means of a fire or explosion . . . [w]ithout the consent of all persons who have a possessory . . . interest therein." T.C.A. § 39-14-301(a)(1). "A person commits aggravated arson who commits arson as defined in § 39-14-301" and "one (1) or more persons are present therein" or "any person . . . suffers serious bodily injury as a result of the fire or explosion." T.C.A. § 39-14-302(a)(1)-(2).

In the instant case, the proof at trial established that the defendant, after twice assaulting the victim with both a beer can and a brick, located a container of gasoline, poured gasoline into a cup, and, without the consent of the victim, entered the victim's residence and threw the cup of gasoline onto the upper body of the victim. The defendant then obtained a cigarette lighter and used it to ignite the gasoline she had thrown on the victim, causing the victim and his house to catch on fire and causing serious bodily injury to the victim. In addition to the victim, both Mr. Carpenter and Ms. Nash were present and seated near the victim when the defendant started the fire. Viewing this evidence in the light most favorable to the prosecution, we hold the elements of both types of aggravated arson were overwhelmingly established at trial.

The defendant argues that the State failed to prove that she acted "knowingly" with respect to the damage caused to the victim's residence. Because, the

defendant contends, she did not realize the fire would be so damaging, and because the jury found her guilty of reckless endangerment rather than attempted first degree murder, the State failed to prove that the defendant possessed the requisite mental state. A person acts "knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). In addition, "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id.* In effect, the defendant is advancing the theory that aggravated arson is a result-of-conduct offense and that, because she did not intend the result, the aggravated arson convictions cannot stand.

This court, however, has previously held that "aggravated arson is *not* a result-of-conduct offense." *State v. Gene Shelton Rucker, Jr.*, No. E2002-02101-CCA-R3-CD, slip op. at 12 (Tenn. Crim. App., Knoxville, Dec. 9, 2004), *perm. app. denied* (Tenn., Mar. 21, 2005) (emphasis added). In reaching this conclusion, the court reasoned as follows:

> Grammatically speaking, the word "knowingly" [in the definition of arson] modifies "damages," which refers to the result of the person's conduct. Nonetheless, the arson statute does not focus purely on the result – that is, damage to a structure. Instead, the nature of the conduct – creating a fire or explosion – that causes the damage to the structure is consequential and central to the offense. Measured according to the parameters set forth in [*State v.*] *Ducker*[, 27 S.W.3d 889, 895-96 (Tenn. 2000)], arson and aggravated arson, therefore, are not result-of-conduct offenses; they do not require that a defendant act with an awareness that setting a fire or creating an explosion is reasonably certain to cause damage to a structure.

*Id.*; *see also State v. Jeremy Wendell Thorpe*, No. M2014-00169-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Nashville, Mar. 16, 2015); *State v. Brian Allen Osborne*, No. M2014-00352-CCA-R3-CD, slip op. at 20 (Tenn. Crim. App., Nashville, Mar. 9, 2015). The defendant, by her own admission, knowingly set the victim on fire, which in turn damaged the victim's residence. The nature of the defendant's conduct sufficiently established the commission of aggravated arson, and, as such, the evidence adduced at trial strongly supports the defendant's convictions of the same.

- 6 -

## II. Sentencing

Next, the defendant claims that the trial court erred in its application of certain enhancement factors and in failing to apply certain mitigating factors. Specifically, the defendant contends that the trial court erred in its application of enhancement factor three, that the offense involved more than one victim, and enhancement factor ten, that the defendant did not hesitate to commit the crime when the risk to human life was high. *See* T.C.A. § 40-35-114(3) & (10). With respect to the mitigating factors, the defendant argues that the trial court should have applied factor eight, that she was suffering from a mental condition which significantly reduced her culpability, and the non-statutory factor of the showing of remorse. *See* T.C.A. § 40-35-113(8) & (13). The State responds that the 32-year sentence imposed by the trial court was appropriate.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

We need not tarry long over the defendant's claim because, even assuming that the trial court misapplied or failed to apply certain enhancement factors or mitigating factors, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d 706. Nothing in the record suggests that the trial court in this case "wholly departed from" the Sentencing Act. To the contrary, the record reflects that the trial court considered all the relevant principles associated with sentencing, including the enhancement and mitigating factors, when imposing the sentence in this case. Accordingly, we conclude that the record supports the length of sentence imposed in this case.

*III. "Substantial Justice"*

Although not included in her "Statement of the Issues" or set forth as a separate argument in her brief before this court, the defendant includes, as part of her sentencing argument, a subsection entitled "Substantial Justice" in which she contends that the trial court failed to properly act as a thirteenth juror in this case. Although the defendant admits that she is raising this issue for the first time on appeal, she contends that it is appropriately reviewed for plain error.

Before an error may be recognized as plain, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). Authority to correct an otherwise "forfeited error" lies strictly "within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 732 (1993) (citations omitted).

In *State v. Smith*, our supreme court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

> "(a) the record must clearly establish what occurred in the trial court;
>
> (b) a clear and unequivocal rule of law must have been breached;
>
> (c) a substantial right of the accused must have been adversely affected;
>
> (d) the accused did not waive the issue for tactical reasons; and
>
> (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

In the instant case, the record reflects that the trial court specifically approved the verdict as the thirteenth juror for each of the defendant's three convictions. As such, nothing indicates that a "clear and unequivocal rule of law" was breached, and, therefore, the defendant's failure to establish this factor bars further consideration of this issue.

*Conclusion*

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE